# Case No. 9,442.

### In re MERCHANTS' INS. CO.

[6 Biss. 252.] [1]

District Court, N. D. Illinois. Dec.. 1874.

BANKRUPTCY—MEETING OF CREDITORS—NOTICE—ACTION OF — RULES OF PROCEEDING — ASSIGNEE'S ACCOUNTS—EXTRA ALLOWANCE.

1. A notice to creditors that a meeting would be held at a specified time and place for the purposes named in the 27th section of the bankrupt act [of 1867 (14 Stat. 529)], and that a final dividend would be declared. is a sufficient notice to authorize such meeting to make a final disposition of the estate.

2. Where the assignee's accounts and vouchers have been filed with the register, a reasonable time before such final meeting. the meeting may by vote properly dispense with the reading of them. and the exhibition of the vouchers. nor have individual creditors the right then to insist upon such reading or exhibition.

3. In the absence of specific provisions of law on any point. creditors' meetings are properly guided by the rules and usages of parliamentary bodies.

4. A creditors' meeting has no power over the accounts or fees of the assignee. but if the register submits them to such a meeting, their action will be regarded by the register and court, unless there exist grave reasons to the contrary.

5. The register has no authority to allow an extra compensation to the assignee. even after a vote by the creditors' meeting. The proper practice is to apply to the court for such extra allowance previous to the final meeting.

In bankruptcy.

W. H. Sisson, for objectors.

Bennett, Kretzinger & Veeder. for assignee.

BLODGETT, District Judge. At the request of W. H. Sisson and J. N. Witherell,

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

H. N. Hibbard, Esq., one of the registers of this court, to whom this case is referred, has certified to the court twelve questions touching the powers and duties of the register in the conduct of creditors' meetings. I do not propose to answer these questions seriatim, as they all practically relate to a few points of practice stated in different phases, and several of the questions seem to be purely speculative, and no direct or categorical answer is deemed necessary for a solution of the points raised in the case.

On the first of October last, an order of court was duly entered on the application of the assignee for a general meeting of the creditors of the bankrupt to be held before Mr. Hibbard, register, on the second day of November last, for the purposes named in the 27th and 28th sections of the bankrupt law. Due notice of the time, place and purpose of the meeting was given by the assignee, and the notice also stated that at said meeting a final dividend would be declared. The assignee reported to the meeting an account of his receipts and expenditures as such assignee, but on motion of Mr. Sisson, the meeting adjourned to the 24th of November, and the assignee was directed by the register to prepare and file in the register's office on or before the 16th of November, a full itemized account of his receipts and payments, for the purpose of being examined by the creditors. The assignee, in pursuance of said order, did, on the 16th of November, file said itemized account, with the register, verified by oath, and the vouchers pertaining thereto, and the same remained in the register's office until the day to which said meeting was adjourned, subject to the inspection of all persons interested. The adjourned meeting was held, pursuant to adjournment, on the 24th of November, but was not attended by a majority in number and amount of all the creditors who had proved their debts. At this meeting the itemized account of the assignee was produced and the items for assignee's services, amounting in the aggregate to the sum of $10,500, discussed by the creditors present, that being the only element of the assignee's account to which any exception seems to have been taken. After the matter had been fully discussed, the register, for the purpose of obtaining the sense of the creditors present, upon the charges of the assignee, submitted to the meeting a motion made by a creditor, to the effect that the accounts and charges of the assignee as presented be approved, to which action of the register in the submission of said motion to the meeting, Mr. Sisson and Mr. Witherell objected; but, notwithstanding their objections, the register put the motion to the meeting, and the same was passed by a large majority of the creditors present. Said Sisson then insisting that he had had no time to examine the assignee's account, the meeting was again adjourned until the 27th of November. On the 27th a further meeting was held, pursuant to adjournment, at which meeting the assignee commenced to read his itemized account, whereupon Mr. Sisson moved that the voucher for each item of said account should be produced and exhibited to the meeting by the assignee. It was then stated that the vouchers numbered over 8,500, which statement was conceded to be substantially true. Some of the creditors present then objected to Mr. Sisson's motion, on the ground that he had had ample time for the examination of the accounts and vouchers, and that one adjournment had been had expressly for the purpose of enabling him to examine said accounts, and that he had made such examination; and it was claimed that Mr. Sisson should point out or indicate the items of the account to which he objected. Mr. Sisson refusing to specify any particular item of the account as objectionable, and insisting on the reading of the account and vouchers in detail, a motion was made to dispense with the reading and approve the accounts of the assignee, including his charges for fees and expenses, which, although objected and excepted to by Mr. Sisson and Mr. Witherell, was put to the meeting by the register and almost unanimously adopted; after which proceedings the register audited and approved said assignee's account, except as to the charges for register's fees, the register having examined said account and vouchers and satisfied himself of its correctness.

To this action of the register in submitting to the meeting these various motions for approving the assignee's charges for fees and expenses, and dispensing with the reading of the accounts and vouchers, and approving the same against the objections of Mr. Sisson and Mr. Witherell, they except, and request the opinion of the court as to the regularity of these proceedings.

The order of court calling this meeting directed it to be held for the purposes of a final dividend. The notice of the assignee seems to have stated that the meeting would be held for the purposes named in section 27 of the bankrupt law, instead of stating that it would be held for the purposes named in sections 27 and 28; but it also stated that a final dividend would be declared, and as all creditors must be presumed to have known that this was not the first dividend meeting, it seems to me the business of making a final disposition of the affairs of the estate and declaring a final dividend was properly and legally before the meeting. One of the preliminaries to the making of such dividend, is the auditing of the assignee's account. The law and rules devolve the duty of passing and auditing the assignee's account upon the register, and the uniform practice by the register of this court has been to submit the assignee's accounts to the creditors' meeting for examination, discussion, explanation and approval before the same was audited, a practice which has always seemed to me eminently just and fair toward all parties interested. Perhaps

by the strict letter of the law the assignee's accounts need not be submitted to the creditors' meeting before auditing, but there can certainly be no harm in it, and I am not disposed to change the practice in that regard. The creditors are entitled, before the assignee's accounts are finally approved, to a full examination of the same, and there seems no occasion so appropriate as the duly called dividend meetings for such examination and discussion. In this case the account presented on the first assembly of the creditors pursuant to this call does not seem to have been in strict compliance with the rules, at least on objection being made an itemized account with all vouchers was ordered to be filed by the 16th of November in the register's office, and the meeting was adjourned until the 24th. The account and vouchers were filed within the time limited, and all creditors had opportunity to examine the same as fully as they chose for the eight days intervening before the adjourned meeting was held, and some creditors appear to have availed themselves of their privilege. The account was a very long one, involving the collection and disbursement of over $500,000, and the administration and winding up of the affairs of one of the largest insurance companies existing in this city at the time of the great fire. The vouchers were necessarily numerous.

The only items specifically objected to by any creditor were those charged by the assignee for his own compensation, and no one objected to these except Messrs. Sisson and Witherell. At the first meeting this item was discussed, and after discussion, a motion was made that the meeting approve the charge and the register took the vote of the creditors present or represented at the meeting on the question.

The meeting, also, on motion dispensed with the reading of the assignee's account and vouchers in detail, although Mr. Sisson and Mr. Witherell insisted upon such reading. I can see no irregularity in this. Neither the bankrupt law nor the rules under it, nor the usages of parliamentary bodies, by which creditors' meetings are properly guided, in the absence of specific provisions of law on any point, require that the entire body of creditors attending a meeting, shall sit and hear read the report and accounts of the assignee, unless they choose to do so, to gratify the whim or caprice of one or two creditors. If the majority of those present at the meeting see fit to dispense with the reading they can undoubtedly do so. Ample opportunity should be given all creditors to examine and object to the assignee's accounts, but that does not require that those who do not wish to make such examination, or have already made it to their own satisfaction, should sit through a creditors' meeting to hear those accounts read in detail.

In this case the only objection which took any specific form, or was even worthy of attention, was in regard to the items for assignee's fees and charges, and it was peculiarly appropriate that the register should take the views of the creditors present or represented as to those items. Not that he or the court was necessarily to be governed by the vote in finally passing the assignee's accounts. Yet the item being large and it being presumable that many of the creditors had information in regard to the nature and value of the assignee's services, their judgment on the question is certainly of weight, and the expression of a large majority should not, except for grave reasons, be overruled.

When there is a majority in value of the creditors of an estate present, the action of the meeting, or of a majority of such a meeting, should be as far as possible regarded in any matter resting in the discretion of the court or register, such as the allowing of extra compensation to the assignee. The passing of the general accounts of the assignee and settling his fees as allowed by law are, however, matters with which the creditors' meeting has nothing to do except so far as the register sees fit to submit them to the meeting for advice or information. Nor does it make any difference whether there is a majority in number or value of the creditors present or represented at such meeting. It is just as proper to take the sense of those present on any of these questions as if all were present. The meeting is a legal meeting, and what is done by those present is as binding as if all the creditors were present. Neither a minority nor majority can audit the assignee's accounts; that is the duty of the register.

The real grievance, if I properly understand these proceedings and objections, consists in the fact that the assignee charged $2,500 more than his legal fees, and the register, after said charge had been approved by the creditors present, approved the account including this item.

By the 27th and 28th sections of the bankrupt law, assignees besides being allowed certain specific fees may be allowed a reasonable compensation for their services in the discretion of the court. This allowance of extra compensation is no part of the duty of the creditors' meeting nor of the register, but is to be allowed by the court in the exercise of its judicial discretion in view of the nature of the duties performed by the assignee and the degree of compensation he has already received from the regular fees. But for the purpose of determining the propriety of such an allowance, it is eminently proper that the question of its fairness should be, if practicable, submitted to the creditors in some form. If it is charged into his general account which creditors have had an opportunity to examine, and no objections are made, or if submitted to a creditors' meeting and sanctioned by an almost unanimous vote of the creditors present, such action would have great weight with me in determining the propriety and amount of the allowance, and if the

meeting was largely attended I should consider the vote in favor of the allowance almost potential.

The certificate in this case shows that the register allowed and audited the assignee's entire claim after taking the vote of the meeting. In this I think he erred. The proper practice I think would be where an assignee claims extra allowance for him to apply to the court· for such allowance previous to the final meeting, and the court, on hearing the application, can allow such amount .as the facts justify, which would then be properly chargeable as an item in the assignee's account to be reported to the meeting and audited by the register.

The practice, however, in this district has heretofore been to submit the entire claim of the assignee to the creditors at the final meeting, and if approved by a majority, the register passed the account without submitting it to the court. I do not intend by what I have said to disturb any settlements of assignee's accounts which have been made and passed unchallenged, but only to indicate a practice for the future, and to say that in this case leave will be given the assignee to present his claim for extra allowance at any time before the dividend is paid.